## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DIXIE NICOLE TENNISON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-23-712-STE** |
| ) | |
| **MARTIN O'MALLEY,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ___). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c). The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES and REMANDS** the Commissioner's decision.

## I.  PROCEDURAL BACKGROUND

Plaintiff initially filed for Social Security benefits in July 2019. Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-20). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Ms. Tennison appealed to this Court, which remanded the case for further administrative proceedings. (TR. 819-27).

On remand, the ALJ held two additional administrative hearings, followed by a second unfavorable decision. (TR., 729-50, 751-55, 710-22). The Appeals Council denied Plaintiff's request for review (TR. 707-09), rendering it the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 30, 2019, the alleged onset date. (TR. 712). At step two, the ALJ determined Ms. Tennison suffered from the following severe impairments: obesity, inflammatory polyarthritis, fibromyalgia, asthma, Chiari syndrome, restless leg syndrome, morphea, hypothyroidism, and periarticular osteopenia of the hands. (TR. 713). At step three, the ALJ found Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 714).

At step four, the ALJ concluded that Ms. Tennison retained the residual functional capacity (RFC) to:

> [P]erform sedentary work except that the claimant can occasionally climb
> ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot
> climb ladders, ropes, or scaffolds. The claimant can frequently handle and

finger. The claimant is to avoid concentrated exposure to extreme cold, dusts, fumes, gases, odors, and poor ventilation.

(TR. 715) (citation omitted).

The ALJ presented the RFC limitations to a vocational expert (VE) to determine whether Plaintiff could perform her past relevant work. (TR. 746-47). Given the limitations, the VE stated that Ms. Tennison could perform her past relevant work as a medical secretary and a medical transcriber. (*Id.*) The ALJ then adopted the VE's testimony and concluded, at step four, that Ms. Tennison was not disabled based on her ability to perform her past relevant work. (TR. 721-22).

## III.   ISSUES PRESENTED

Ms. Tennison raises the following: (1) the ALJ erred in his consideration of the opinion of Plaintiff's treating rheumatologist, Dr. Keshav Panday; and (2) the ALJ's RFC regarding Plaintiff's manipulative limitations is not supported by substantial evidence.

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla

. . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quotations omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quotations omitted).

## V.    MEDICAL RECORD[1]

On February 19, 2018, Plaintiff reported pain in her hands, especially at the distal interphalangeal joints. She further reported it was worse when performing transcription for her job. (TR. 294). Upon examination, the physician noted tenderness and swelling in both hands and wrists. (TR. 295). On April 24, 2019, Plaintiff had an appointment with Dr. Gary Griffin, her primary care physician, for, *inter alia*, rheumatoid arthritis. (TR. 374-80). Plaintiff reported "experiencing worsening hand pain and believe[s] it's due to her RA. She admits it has been affecting her performance at her job. Denies any improvements with Plaquenil and Methotrexate . . . ." (TR. 374).

On May 30, 2019, Plaintiff reported to Dr. Griffin that she experienced dull, achy pain in her hands and wrists that worsens with typing. (TR. 658). Dr. Griffin noted "joint pain, joint swelling, muscle weakness, muscle tenderness and morning stiffness, lasting 120 minutes[.] Joints/parts affected: [wrists,] knees[,] hips[,] especially right[,] and

---

[1] Because Plaintiff's challenges on appeal focus solely on the RFC's manipulative limitations, the Court's discussion of the medical record and legal analysis is likewise so limited.

fingers[,] toes." (TR. 659). Upon examination, Dr. Griffin observed tenderness to palpation in the metacarpophalangeal joints in three of Plaintiff's fingers on her right hand and two on the left, as well as in her proximal interphalangeal joints and wrists. (TR. 661). Dr. Griffin ordered x-rays of Plaintiff's hands, which showed, *inter alia*, periarticular osteopenia with soft tissue swelling in her hands. (TR 661, 703-04).

In November 2019, Plaintiff visited Dr. Panday at the Oklahoma Arthritis Center, reporting that she was not functioning better having been on arthritis medications. (TR. 648). Specifically, she explained that with the medications her pain was 7/10 as opposed to 9/10, she experienced dull, achy, and constant pain in multiple joints in her hands, but "she thinks [M]ethotrexate has helped some." (TR. 648). Upon examination, Dr. Panday observed tenderness to palpation in Plaintiff's wrists, and the same in multiple metacarpophalangeal and proximal interphalangeal joints in her hands. (TR. 651). On May 20, 2020, Plaintiff reported that she was still not functioning better with arthritis medications, her pain was 6/10 with medication as opposed to 8/10, she was experiencing pain in her fingers, primarily in her distal joints, her pain was worse with typing, but "[o]ther hand pain is better with [Methotrexate]." (TR. 643). Dr. Panday observed decreased flexion in her hands and noted she still experienced joint pain with Methotrexate. (TR. 646).

In late July 2020, Dr. Panday completed a Medical Assessment Form in which he stated that Plaintiff was limited to standing or walking two hours and sitting for four hours with lengthy breaks during an eight hour workday, pain and fatigue would affect her

attention during more than 20 percent of an eight hour workday, she would need more than three unscheduled breaks lasting in excess of 15 minutes, would need to miss approximately four days per month, and could only use her hands and fingers to perform grasping and fine manipulations between 21 and 30 percent of an eight-hour workday. (TR. 705-06).

In September and November 2020, Plaintiff reported her pain was stable on medications. (TR. 1079, 1086). In May and December 2021, Dr. Griffin noted Plaintiff was stable and that she reported pain with activity. (TR. 1066, 1070, 1147).[2] In March and September 2022 and March 2023, Plaintiff reported that her rheumatoid arthritis pain was stable. (TR. 1150, 1156, 1163).

## VI.   THE ALJ'S CONSIDERATION OF DR. PANDAY'S OPINION AND THE RFC'S MANIPULATIVE LIMITATIONS ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE[3]

Plaintiff challenges the ALJ's RFC determination that she could perform frequent fingering and handling. The ALJ found unpersuasive Dr. Panday's opinion that Plaintiff was limited to only occasional handling and fingering. Highlighting the difference between Dr. Panday's opinion and the RFC, Social Security Ruling (SSR) 83-10 defines occasionally as "occurring from very little up to one-third of the time . . . . generally total[ling] no more than about 2 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5. The

---

[2] At that time, Plaintiff discontinued seeing Dr. Panday because she lost her health insurance and could not afford to continue seeing a rheumatologist. (TR. 741, 742-43).

[3] Because Plaintiff's two allegations of error overlap, the Court addresses them together herein.

same Ruling defines "frequent" as "occurring from one-third to two-thirds of the time . .

. for a total of approximately 6 hours of an 8-hour workday." *Id.* at *6.

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in

the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In this regard, the

ALJ must articulate how persuasive he finds the medical opinion. 20 C.F.R. § 416.920c(b).

Persuasiveness is determined primarily by an opinion's supportability and consistency,

and the ALJ must explain how he considered those factors. 20 C.F.R. § 416.920c(b)(2) &

(c)(1)-(2).

> "Supportability" examines how closely connected a medical opinion is to the
> evidence and the medical source's explanations: "The more relevant the
> objective medical evidence and supporting explanations presented by a
> medical source are to support his or her medical opinion(s) or prior
> administrative medical finding(s), the more persuasive the medical opinions
> or prior administrative medical finding(s) will be." § 416.920c(c)(1).
> "Consistency," on the other hand, compares a medical opinion or prior
> administrative medical findings to the evidence: "The more consistent a
> medical opinion(s) or prior administrative medical finding(s) is with the
> evidence from other medical sources and nonmedical sources in the claim,
> the more persuasive the medical opinion(s) or prior administrative medical
> findings(s) will be." § 416.920c(c)(2). An ALJ must explain how he or she
> "considered the supportability and consistency factors." § 416.920c(b)(2).
> An ALJ must consider factors three through five (relationship with the
> claimant, specialization, and other factors) but is not required to explicitly
> discuss them unless there are differing medical opinions on an issue and
> those opinions are equally well-supported and consistent with the record.
> See § 416.920c(b)(2), (3).

*Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *2 (10th Cir. Oct. 28, 2022).

Additionally, the ALJ may not selectively review any medical opinion and must

provide a proper explanation to support his findings. *See Chapo v. Astrue*, 682 F.3d 1285,

1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and

choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." (quotations omitted)). Further, it is well established that an ALJ must demonstrate that he "considered all of the evidence" and must discuss not only the evidence supporting his decision, but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). While the ALJ need not discuss every piece of evidence in the record, he also may not "mischaracterize or downplay evidence to support [his] findings," *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 640-41 (10th Cir. 2018).

In finding Dr. Panday's opinion unpersuasive, the ALJ explained, in relevant part,

> Dr. Panday characterizes the claimant's chronic pain and fatigue as severe, but in May 2019, when the claimant began to report worsening symptoms, she stated her pain was mild to moderate. . . . [O]verall, Dr. Panday primarily observed tenderness and some swelling and synovitis in the hands. These finding support the limitation to sedentary work with six hours of sitting and two hours of standing and/or walking, and frequent handling and fingering. Dr. Panday's limitation to occasional use of the hands is not consistent with the evidence that the claimant is currently using her hands more than occasionally as she testified she works four hours per day as a medical transcriptionist. Additionally, his limitation to occasional use of her hands is inconsistent with the claimant's reported activities of daily living, in which she is able to manage her personal care and hygiene independently as well as prepare simple meals, perform some light household chores, and shop in stores despite the effects of her impairments. Dr. Panday's opinion regarding the claimant's need for time off-task, increased breaks, and increased absences is also not completely consistent with the evidence as the claimant has reported that her medications of Methotrexate and Ultram improve her hand and back pain. Further, the claimant has not sought additional treatment including alternative medications or hospital treatment. Dr. Panday's opinion is somewhat supported by his examinations of the claimant in 2019 and 2020, however he last treated her more than

two years prior and has not had the opportunity to assess her symptoms
and functioning in the last two years.

(TR. 720-21) (citations omitted). In reviewing the record as a whole, the Court finds the

ALJ was unduly selective in the evidence upon which he chose to rely and discuss.

In his supportability analysis, the ALJ acknowledged Dr. Panday's records

indicating tenderness, swelling, and synovitis in Plaintiff's hands. (TR. 720 (citing TR. 646,

651, 1051)). As the ALJ noted, Plaintiff initially reported her worsening pain as mild to

moderate, but Dr. Panday did not complete the Medical Assessment Form until July 2020,

over one year after those reports. (TR. 658, 705-06). Throughout the record, Plaintiff

described her symptoms as becoming increasingly worse over time. (TR. 44-47, 54, 643,

646, 648, 1066, 1068, 1070, 1079, 1086, 1147, 1150, 1156, 1163).

Turning to consistency, the ALJ indicated that Dr. Panday's opinion was

inconsistent with the remainder of the record. (TR. 720). The ALJ cited to several medical

reports to conclude that medications "improved" Plaintiff's hand pain. (TR. 720-21 (citing

TR. 643, 646, 648 1070, 1086, 1147, 1150, 1156, 1163)). As explained in Plaintiff's

previous Social Security appeal, it is not clear to the Court that these records support a

finding that medications improve Plaintiff's symptoms to the extent the ALJ indicates.

In November 2019, Plaintiff reported her pain was 7/10 with her medications, as

opposed to 9/10 without, and that she still experienced pain in her hands and elbows.

(TR. 648). Dr. Griffin noted pain and tenderness in hands, fingers, and wrists. (TR. 651).

On May 20, 2020, Plaintiff reported that in spite of her medications, she still experienced

pain in her fingers, describing it at a 6/10, and explained that it worsens with typing. (TR. 643). The same visit also showed decreased flexion in Plaintiff's hands. (TR. 646).

From late 2020 through March 2023, Dr. Griffin described Plaintiff's pain was "stable" or "controlled." (TR. 1079, 1086). Oftentimes, when her physicians described Plaintiff's pain as stable or controlled, they also acknowledged that she still experienced significant pain, especially with activity, including typing. (TR. 643, 646, 1066, 1068, 1070, 1147, 1156, 1163).

The ALJ also found that Plaintiff's daily activities conflicted with Dr. Panday's opinion regarding her manipulative limitations. (TR. 720). Plaintiff alleges that the ALJ selectively relied on and mischaracterized her reports. (ECF No. 15 at 18). According to the ALJ, Plaintiff managed her personal care and hygiene, prepared simple meals, performed light household chores, and shopped. (TR. 720). The ALJ indicated he garnered this information from Plaintiff's function report dated August 19, 2019, as well as her administrative hearing testimony. (TR. 225-32, 720). However, the ALJ omitted critical details in both of Plaintiff's function reports and her hearing testimony in discussing her daily activities.

With regard to personal care and hygiene, Plaintiff reported that while she previously showered and fixed her hair daily, she now only showers three times per week, air dries her hair, and no longer wears makeup. She only wears pants with elastic waistbands, and she does not wear shirts that have buttons nor shoes that have laces. (TR. 226). Additionally, the only meals she prepares are sandwiches and microwavable

frozen foods. Her boyfriend, Joe Matsayko, performs the remainder of the cooking. (TR. 226-27). She also reported that it takes her an extensive amount of time to shop, and she needs assistance; therefore, Mr. Matsayko or her friend, Kay, accompanies her. Finally, she explained that she is always in significant pain after grocery shopping for two hours. (TR. 228-29).

As noted by Plaintiff, the ALJ's reliance on her ability to perform certain daily activities is not entirely accurate, as it omits details related to Plaintiff's abilities in these areas. In *Sitsler v. Astrue*, 410 F. App'x 112 (10th Cir. 2011), the Tenth Circuit Court of Appeals held that this type of selective and misleading review of Plaintiff's daily activities is impermissible. Therein, the claimant argued that the ALJ mischaracterized the extent of his daily activities, ignoring particular qualifications and limitations. *Id.* at 117. In discounting the plaintiff's subjective reports, the ALJ relied on the plaintiff's activities of daily living, stating that he could care for his personal needs, care for his small children, perform household chores, drive, and go shopping. *Id.* at 114. In contrast, however, the record reflected that the claimant had to have help in caring for his children, he only made simple meals, his ability to perform household chores was limited to a few minutes, his shopping was limited, and he drove very little. *Id.* at 117. Noting that the ALJ's analysis was "selective and misleading," the court stated that "an ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations." *Id.* (citing *Talbot v. Heckler*, 814 F.2d 1456, 1462, 1464 (10th Cir. 1987)

(noting that the ALJ improperly based conclusion that the claimant could do light work on a mischaracterization of his activities).

Here, as in *Sitsler*, the ALJ mischaracterized the extent of Plaintiff's daily activities, ignoring numerous qualifications and limitations to which she testified and reported. Thus, the Court concludes the ALJ's reliance on Plaintiff's activities is flawed and does not provide substantial evidence to support his consideration of Dr. Panday's opinion, nor the manipulative limitations included in the RFC.

The ALJ further relied on Plaintiff's current use of her hands in her part-time job, stating that Dr. Panday's "limitation to occasional use of the hands is not consistent with the evidence that the claimant is currently using her hands more than occasionally[,] as she testified she works four hours per day as a medical transcriptionist." (TR. 720). Plaintiff testified that when she initially started her current position, she worked full time from home. (TR. 47). Over time, as the severity of her symptoms increased, her employer accommodated her by allowing lengthy breaks. Later, she began cutting her total hours per week and now works part time only. (*Id.*). At one point, she worked four hours per day, five days per week, but has since reduced her work further to four days per week. (TR. 44, 46). She works Monday, Tuesdays, Thursdays, and Fridays because having the day off in the middle of the week is beneficial and four days in a row is too painful. (TR. 54). Additionally, Plaintiff never works four continuous hours but instead, works for two hours, takes a two-hour break, and then works two final hours. (TR. 44-45). Finally, even

under this curtailed schedule, Plaintiff generally must call in two to three days per month due to pain in her hands. (TR. 47-48).

While the ALJ is correct that Plaintiff's current part time work *may* indicate that she can handle and finger more than occasionally, it does not provide substantial support for a determination that she can handle and finger up to six hours, five days per week. In his Response, the Commissioner argues that "there is nothing" in the definition of frequent "that prevents an individual from performing the work with breaks." (ECF No. 17 at 9). However, during the administrative hearing, when the ALJ included in his hypothetical the need for breaks or to be off task for 20% of the day, the VE testified that each requirement would preclude the availability of jobs in the national economy. (TR 746-47). Thus, the Commissioner's argument does not salvage the ALJ's failure to discuss evidence in the record that conflicts with his RFC.

The substantial evidence test does not involve a simple search of the record for isolated bits of evidence that support the ALJ's decision. *Himmelreich v. Barnhart,* 299 F. Supp. 2d 1164, 1167 (D. Colo. 2004). Further, an ALJ must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his conclusions regarding the evidence. *Bryant,* 753 F. App'x at 640. Reviewing the decision along with the entirety of the evidence in this case reveals that the ALJ failed to address significant portions of the record that conflicted with his evaluation of Dr. Panday's opinion, as well as his RFC. Accordingly, the record does not

provide substantial support for the ALJ's decision, and the case should be remanded for further consideration.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES and REMANDS** the Commissioner's decision.

ENTERED on April 15, 2024.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE